Chief Justice Robertson
delivered the Opinion of the Court.
Carlile—claiming under a conveyance of 1830, from Ashley, who claimed under a conveyance of 1825, from Cofer—having, upon that title, obtained a judgment for eviction, against Stephen Sharp, the alienee of Job Sharp, who had previously evicted Cofer, as the tenant of Ashley. by a judgment in ejectment founded on a sheriff’s deed, executed in 1828, in consideration of a purchase by him of Cofer’s interest, for about seventeen dollars, under his own execution against him, upon a judgment of 1827, for one hundred and fourteen dollars—Sharp, the defendant in the action, enjoined the judgment, upon the allegation that the conveyance to Ashley, and that also from him to Carlile, were merely colorable, and were fraudulent as to Cofer's judgment creditors, under whom he himself held. And the Circuit Court—upon the exhibits and proofs and the answers of Carlile and Ashley and Cofer, all positively denying the imputed fraud—having dissolved the injunction and dismissed the bill—this appeal seeks the reversal of that decree.
In the revision of the decree, the first question to be considered, is whether the record of the appellees action of ejectment against the appellant, should be deemed to be a part of the record of this case, and if so, whether it be entitled to any, and if any, what effect on the question of fraud now involved.
As Carlile’s answer relied on the alleged fact, that the same question of fraud had been litigated in the action of ejectment, and as the clerk has certified that the record of that action, exhibiting that fact, was on file among the papers of this suit, on the final hearing there *488 of in the Circuit Court, it was the duty of that court to notice it as an exhibit; and therefore, nothing appearing to the contrary, it is our duty to presume that it was so noticed and considered; consequently, it should be deemed a part of the record in this Court,
A full answer to a bill might, perhaps be taken as a waiver of a plea pleaded; but held that, where the defendant pleaded a former decision as a bar, and proceeded, in his response, to answer fully, repeating and relying still upon the bar, the answer was not a waiver of that defence. Though the answer might waive the plea, the plea would not waive any thing in the answer. For—
A defendant may avail himself, in his answer, of any and all matters of defence. To save time, and the trouble of answering in full, he may rely upon any single defence in bar, or abatement, by a special plea; but is not required to plead any special matter in bar.
If the trial of an alleged fraud at law, is not per se, a bar to its consideration in eq. still, after a trial at law, no relief should be granted upon doubtful testimony.
*488 The bill of exceptions contained in the copy of the record of the ejectment, shows, that the fraud now relied on, was litigated on the trial of that action; and the judicial deduction is, that the question of fraud thus litigated, was decided by the jury and the Court, against appellant; for he had a right to rely on such a defence, in bar of the action, and it neither appears, nor should, therefore, be presumed, that he was not permited to avail himself of the full benefit of it on the trial. And, though the bill of exceptions may not be evidence the truth of the facts purporting to have been proved, it is certainly, not only admissible, but satisfactory, proof that those facts were relied on, and actually litigated and decided, in the action of ejectment.
And consequently, as courts of law and equity have a concurrent jurisdiction over such questions of fraud, . and therefore a decision of such a question by either tribunal, should, as a general rule, be conclusive in the other, the appellant may be concluded as to the fraud relied on by him in this case—unless, as urged by his counsel, the appellee has waived the benefit of the bar by the manner ha which he has answered the bill. But we are of the opinion that the appellee, having specially pleaded the bar, and then, in a continuous response, answered the allegations of the bill, and therein urged again the matter thus before more formally pleaded, should not, as argued, be now precluded from availing himself of it merely because he thus relied on it twice, and in two different modes. Were it admitted that the plea and answer were not parts of one entire response, and even if the answer to the merits should be considered as overruling the special plea in bar; still we could not admit that the plea, being overruled, should have the effect of waiving or overruling so much of the answer as relies on the same matter set forth in the plea.
And we do not doubt that a defendant in chancery *489 has a right to avail himself in an answer, of any matter in bar of the suit against him, and of as many such matters altogether, as may exist, and is not bound to plead separately and specially any fact which, when shown, may be sufficient, in judgment of law, to bar the equity asserted in the bill.
A man conveyed his land in fee, and took a lease for life ; afterwards, on account of a failure to have the deed recorded, another was made, without any new consideration, and without any reservation, or recognition of the lease: held that the legal effect of the latter deed, is to merge the lease for life (tho’ the parties did not intend it ;) consequently, a sale of the lessee’s interest under execution, passed nothing— unless the last deed was made to transfer the lessee’s interest, with a fraudulent intent; and after a verdict & judgment against him for the land, the presumption is , that that question was decided in favor of the validity of the deed. If the deed was not fraudulent, and was not intended to affect the lease, the lessee might, on the ground of mistake, assert an available equity to the use of the land during his life. And a judgment creditor of the lessee, might, perhaps, subject that interest to the payment of his debt.
*489 To avoid a response to the allegations of the bill, and save time, he may rely on a single defence—whether in abatement or in bar—by a special plea. But he is not required thus to plead any special matter in bar—not even the statute of limitations. And therefore, waiving the special plea in this case, as overruled by the answer, the bar specially pleaded, being also relied on in the answer, should, as we are inclined to think, have been as availing on the hearing of the case on the whole merits, as it could have been had it been tried on the plea alone, and without answer.
We are therefore strongly inclined to the opinion, that the question of fraud should not now be considered. But, moreover, should it be considered, there would be much difficulty in judicially sustaining the charge of fraud, so as to justify the avoidance of the conveyance to Ashley, and a consequential perpetuation of the appellant’s injunction to the judgment of the appellee; who, in the absence of proof of the payment of any valuable consideration stands in the place of his vendor; and therefore, if the former litigation of the same matter in the action of ejectment should not per se operate as a conclusive bar, still the appellant should not be relieved by a court of equity, on the ground of fraud, doubtful, at least, on the facts, and once before tried and decided between the same parties, It seems therefore that it was proper to dissolve the injunction.
But, nevertheless, there being a prayer for general relief, it is proper that we should, lastly, consider the only ground on which the appellant could, under his general prayer,have any semblance of right to any relief whatever.
It appears that, prior to the date of Cofer's conveyance to Ashley, in 1825, he had conveyed to him the same land by a deed never recorded, and that, therefore, without any other consideration, the subsequent deed, *490 of 1825, was made. It also appears that, by the first contract, Cofer was entitled to hold and enjoy the land, without rent, during his life, and that cotemporaneously with his first deed, he had received from Ashley a written lease for life—and under which he seems to have still continued to hold the land after the last conveyance—both parties appearing to have intended that it should not be extinguished or essentially affected by that subsequent conveyance though absolute and unqualified.
If the lease was not merged, the lessee’s title was vendible, & passed by the sale under ex’on, and the right to the land, as between a party claiming under the deed, and one claiming under a purchase of the lessee’s interest at a sheriff’s sale, having been tried at law, & determined against the latter—he, (being barred by that decision) cannot reassert that title availably, in eq. And, if the lease was merged in the deed, then as the sheriff’s sale of the lessee’s interest passed nothing to the creditor, who purchased it, his conveyance of it, without warranty, to another, gave the latter no title, legal or equitable—no right to be substituted in place of the creditor, nor any interest available in this case.
It is our opinion, however, that, in judgment of law, the deed of 1825—containing no exception or qualification as to the fee simple title purporting to have been conveyed by it—operated as a legal revocation or merger of the prior lease; and consequently, as Cofer could not be deemed to have such an interest in the lease at the time of the purchase by Job Sharp, as was vendible under execution, the foregoing facts could not have been made availing to the appellant, in the appellee’s action of ejectment against him—unless the jury had been of the opinion, that the parties to the deed thereby extinguished the legal title under the lease, for the fraudulent purpose alleged in the bill; and they must now be presumed to have decided that there was no such fraudulent intent as should destroy or essentially affect the legal operation of the deed in any respect material to the defence in the action of ejectment.
But if, as we are now bound judicially to presume, there was no vitiating fraud in the deed of 1825, and if also, as must be inferred from the answers, as well as from other facts, the parties to it did not intend that the lease should in fact, be affected by that conveyance, then, though no title, equitable or legal, seems to have been passed by the sheriff’s deed to Job Sharp, yet it would be evident that, either there was mistake in the execution of the deed of 1825 in such a manner as to merge the lease, or Ashley took the whole title in trust for Cofer's benefit during his life; and upon either of these hypotheses, Cofer might have asserted an available equity to the use of the land during his life, notwithstanding the legal effect of his conveyance to the contrary. *491 And, therefore, had Job Sharp, the judgment creditor, been the complainant in this suit, he might, perhaps, have been entitled, under the general prayer, to a decree for subjecting that equity to the satisfaction of his demand; for the answers admitting, as they all virtually do, the foregoing facts, the equity, or trust, may be sufficiently established, without parol testimony inconsistent with the legal import and effect of the deed of 1825.
Job Sharp is, however, not even a party to this suit: therefore, in this case, as now presented, the only questions are—first: whether the appellant, claiming no other right than that of Job Sharp's alienee, in a deed without warranty, can be substituted to the equity to which Job might have been entitled had he been the complainant; and, secondly: whether he is entitled to any relief whatsoever.
If the lease was not merged in the subsequent conveyance, then the interest of the lessee, being, as it was, legal, and consequently vendible under execution, passed by the sheriff’s deed to Job Sharp, unless, for uncertainty as to what was sold and conveyed by the sheriff, his sale and deed were void. And if any such legal interest was vested by the sheriff’s deed, it passed to the appellant, and, being a matter exclusively triable at law, was concluded by the judgment, in the action of ejectment, and cannot be used availably in this suit in chancery.
And if, as we have before suggested; the legal interest of the lessee was merged in his subsequent deed to the lessor, no right equitable or legal, passed by the sheriff’s sale; and none, consequently, by the deed from. Job Sharp to the appellant. And not only is that deed insufficient to entitle the appellant, to any equity which his vendor might have, to subject Gofer's equitable interest in the lease to the satisfaction of the judgment against him, but there is no other fact or suggestion, tending in any degree to such a conclusion.
The appellant, therefore, has not shown that he has any right to any decree respecting the lease, upon the ground of substitution or otherwise. His only remedy, if he be entitled to any, is against his vendor. And it. *492 is even probable that he is entitled to none, as he seems to have taken the title of his vendor to the land, or rather the chance of some title to it, without warranty or recourse.
Wherefore, the decree of the Circuit Court is affirmed.